

STATE OF NEW YORK
OFFICE OF THE ATTORNEY GENERAL

| LETITIA JAMES | DIVISION OF STATE COUNSEL |
|---|---|
| ATTORNEY GENERAL | LITIGATION BUREAU |

Writer's Direct Dial: (212) 416-8973

May 25, 2021

**BY ECF AND ELECTRONIC MAIL**
The Honorable Cathy Seibel
United States District Judge
300 Quarropas Street
White Plains, New York 10601-4150
chambersnysdseibel@nysd.uscourts.gov

    Re:    <u>Brown v. Urbanski et al</u>, SDNY 21 Civ. 214 (CS)

Dear Judge Seibel:

    This Office represents Deputy Superintendent of Security Stephen Urbanski, Correction Officer Issa Yunes, Correction Sergeant Joseph Deacon, Correction Officer Mark DelBianco, Deputy Superintendent of Administration Sharon Frost, Superintendent Emily Williams, Correction Officer Alexander Minard, Correction Officer Brendan Walsh, Nurse Danielle Cebron, Acting Commissioner Anthony Annucci (collectively "Defendants") in the above-referenced action. I write to respectfully request a pre-motion conference in anticipation of the Defendants' motion to dismiss the Complaint (ECF No. 2) pursuant to Rule 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure.

    Malik Brown, a pro se plaintiff, is an inmate currently in the custody of the New York State Department of Corrections and Community Supervision ("DOCCS"). Plaintiff brings this action against Defendants, who are employees of DOCCS, pursuant to 42 U.S.C. Section 1983, alleging various Eighth Amendment claims arising from a physical altercation with another inmate in which he was involved on June 14, 2020 at Fishkill Correctional Facility.

**Facts Alleged**

    Plaintiff alleges that on June 14, 2020 he was "fully restrained" in the 21A keeplock yard at Fishkill with other inmates. <u>See</u> Compl. at 2. Plaintiff alleges that another inmate "whom [he] had past issues with managed to slip out of his waist chains and commence beating [Plaintiff]." <u>See</u> <u>id</u>. Plaintiff claims that CO Yunes "was less than 5 feet away . . . but did not intervene to cease [the] assault." <u>See</u> <u>id.</u> Similarly, Plaintiff claims that "Sgt. Deacon sat & watched my assault along with Minard, Walsh & Yunes. Instead of causing further injury themselves [sic] they waited for response team." <u>See</u> <u>id.</u> Plaintiff alleges that upon arrival of the response team

"Sgt. Deacon gave responding officer DelBianco an order to administer unnecessary [use of force] against me exposing my open bruising & cracked skull to the chemicals in O.C." See id.

Plaintiff also relies on referenced documents and video that he claims indicate that 36 to 37 minutes passed between when he was assaulted and when his medical examination was reported, which Plaintiff contends demonstrates medical malpractice. See id. at 7. Plaintiff claims that Nurse Cebron falsified a medical report regarding the time of treatment. See id. at 8.

Plaintiff also alleges that DSS Urbanski issued an order that deprived Plaintiff of recreation. See id. at 6. Plaintiff claims that DSA Frost "failed and negligently didn't equip officer Yunes with O.C. or a walkie talkie showing no concern of procedures/precautions taking if/and when an occurrence like mine transpired." See id. Plaintiff claims that Superintendent Williams, who was First Deputy Superintendent handled Plaintiff's subsequent grievance "with no care." See id. at 6. Plaintiff claims that Acting Commissioner Annucci's failures are responsible for the incident, contending that he is either unaware of or learned of unconstitutionally harsh conditions at Fishkill, but failed to address them. See id. at 8-9.

**Anticipated Motion**

Defendants anticipate moving to dismiss the Complaint in its entirety for failure to state a claim and for lack of jurisdiction.

As an initial matter, the Complaint fails to adequately allege the personal involvement of Defendants. Personal involvement is a requirement for damages claims under 42 U.S.C. Section 1983, and "a plaintiff must plead and prove 'that each Government-official defendant, through the official's own individual actions, has violated the Constitution.'" Tangreti v. Bachmann, 983 F.3d 609, 618 (2d Cir. 2020) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 676 (2009)). Plaintiff here includes general allegations of wrongdoing by Defendants, but fails to include specific factual allegations supporting each Defendant's personal involvement in each of the claims.

Additionally, Plaintiff claims that Defendants are liable for his assault by another inmate. "It is not, however, every injury suffered by one prisoner at the hands of another that translates into constitutional liability for prison officials responsible for the victim's safety." Farmer v. Brennan, 511 U.S. 825, 834 (1994). Instead, to state a cognizable constitutional claim, "[f]irst, the plaintiff must demonstrate that he is incarcerated under conditions posing a substantial risk of serious harm. Second, the plaintiff must demonstrate that the defendant prison officials possessed sufficient culpable intent," specifically deliberate indifference. Hayes v. N.Y.C. Dep't of Corr., 84 F.3d 614, 620 (2d Cir. 1996) (citing Farmer, 511 U.S. at 834). Here, the allegations do not support either element of deliberate indifference, as the allegations do not establish conditions posing a substantial risk of serious harm, nor that Defendants acted with the necessary deliberate indifference.

With regard to Plaintiff's claim that excessive force was used to end the altercation between Plaintiff and another inmate, a claim of cruel and unusual punishment in violation of the Eighth Amendment has two components: one subjective, focusing on the defendant's motive for his conduct, and the other objective, focusing on the conduct's effect. Wright v. Goord, 554 F.3d 255, 268 (2d Cir. 2009). When prison officials are accused of using excessive force, the "wantonness"

issue turns on whether "force applied was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." Id.  While Plaintiff alleges here that Sergeant Deacon directed CO DelBianco to use O.C. spray unnecessarily, the facts alleged clearly support that the use was necessary and appropriate under the circumstances, as, by Plaintiff's own account, another inmate was beating Plaintiff at close quarters with his waist restraint locks and chain with sufficient force to cause swelling, abrasions, and a cracked skull.  Therefore, the use of O.C. spray to gain control and stop the assault was supported under the circumstances, even as alleged by Plaintiff, and had the effect of ending a dangerous physical altercation between Plaintiff and another inmate that could have resulted in significantly more harm to Plaintiff had it been allowed to continue.

Additionally, while Plaintiff alleges that he did not receive appropriate medical treatment for his injuries following the altercation, he also fails to support a claim of deliberate indifference with regard to his medical care.  While Plaintiff claims that there was a delay in treatment, he does not indicate that the delay had any sufficiently serious effect on his medical condition to implicate the constitution. Hill v. Curcione, 657 F.3d 116, 122 (2d Cir. 2011) ("the alleged deprivation must be sufficiently serious, in the sense that a condition of urgency, one that may produce death, degeneration, or extreme pain exists.").  Nor do the allegations of the Complaint indicate that any defendant was aware of, but disregarded, a serious risk to his health in obtaining or providing medical treatment.

In any case, on the facts alleged in the Complaint, Defendants should be entitled to qualified immunity, as their conduct did not violate any of Plaintiff's clearly established rights. See Gonzalez v. City of Schenectady, 728 F.3d 149, 154 (2d Cir. 2013).  Plaintiff alleges that he was harmed by another inmate who slipped out of his restraints, that Defendants waited for a response team before intervening, that Defendants used OC spray to end the assault, and that Plaintiff received medical treatment within 36 to 37 minutes.  Under those circumstances, Defendants would have had "an objectively reasonable belief that [their] actions are lawful," and therefore they should be "entitled to qualified immunity." Spavone v. New York State Dep't of Corr. Servs., 719 F.3d 127, 135 (2d Cir. 2013) (quotations omitted).

Finally, to the extent that Plaintiff intended to make state law claims at all, such as negligence or deliberate indifference, they must be dismissed as barred by New York Correction Law 24. See Baker v. Coughlin, 77 F.3d 12, 15 (2d Cir. 1996).

Therefore, Defendants respectfully request a pre-motion conference in anticipation of their motion to dismiss the Complaint in its entirety.

Thank you for your consideration of the application herein.

Respectfully submitted,

*/s/ Brendan M. Horan*
Brendan M. Horan
Assistant Attorney General
Brendan.Horan@ag.ny.gov