UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
MALIK L. BROWN,                                          :
                                                        :
                              Plaintiff,                :
                                                        :
                - against -                             :     Case No. 21 Civ. 214 (CS)
                                                        :
STEPHEN URBANSKI, ISSA YUNES, JOSEPH                    :
DEACON, MARK DELBIANCO, ALEXANDER                       :
MINARD, BRENDAN WALSH, DANIELLE CEBRON,                 :
ANTHONY ANNUCCI,                                        :
                                                        :
                              Defendants.               :
------------------------------------------------------------------------X

**DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR
MOTION TO DISMISS THE FIRST AMENDED COMPLAINT**

LETITIA JAMES
Attorney General
State of New York
Attorney for Defendants
28 Liberty Street
New York, New York 10005
(212) 416-8973

BRENDAN M. HORAN
Assistant Attorney General
of Counsel

**TABLE OF CONTENTS**

P<small>AGE</small>

TABLE OF AUTHORITIES ........................................................................................... ii

PRELIMINARY STATEMENT ....................................................................................1

STATEMENT OF ALLEGATIONS ..............................................................................3

STANDARD OF REVIEW .............................................................................................4

ARGUMENT ...................................................................................................................6

POINT I       THE FAC FAILS TO STATE A CLAIM FOR DELIBERATE
              INDIFFERENCE WITH REGARD TO PLAINTIFF'S ASSAULT BY
              ANOTHER INCARCERATED INDIVIDUAL....................................6

POINT II      ANY ALLEGED DELAY IN INTERVENING IN THE ALLEGED
              ASSAULT CANNOT FORM THE BASIS OF A CONSTITUTIONAL
              VIOLATION.......................................................................................9

POINT III     THE ALLEGATIONS FAIL TO SUPPORT THE SUBJECTIVE
              ELEMENT OF AN EXCESSIVE FORCE CLAIM...............................11

POINT IV      PLAINTIFF FAILS TO STATE A CLAIM OF DELIBERATE
              INDIFFERENCE TO HIS MEDICAL NEEDS ....................................13

POINT V       THE FAC FAILS TO STATE A CLAIM FOR DEPRIVATION OF
              EXERCISE .........................................................................................15

POINT VI      DEPUTY SUPERINTENDENT URBANSKI, CO MINARD, CO
              WALSH, OR ACTING COMMISSIONER ANNUCCI SHOULD BE
              DISMISSED FOR LACK OF PERSONAL INVOLVEMENT...........17

POINT VII     IN ANY CASE, PLAINTIFF'S CLAIMS SHOULD BE DISMISSED
              BECAUSE DEFENDANTS ARE ENTITLED TO QUALIFIED
              IMMUNITY.......................................................................................19

POINT VIII    TO THE EXTENT THAT PLAINTIFF INTENDED TO ASSERT
              STATE LAW CLAIMS, THEY ARE BARRED .................................22

POINT IX      ALL CLAIMS ALLEGED AGAINST THE DEFENDANTS IN THEIR
              OFFICIAL CAPACITY ARE BARRED .............................................23

CONCLUSION................................................................................................................23

# TABLE OF AUTHORITIES

CASE                                                                                      PAGE(S)

Amaker v. Goord,
   No. 98 Civ. 3634(JGK), 1999 WL 511990 (S.D.N.Y. July 20, 1999) ...................................16

Ashcroft v. Iqbal,
   556 U.S. 662 (2009)................................................................................................. passim

Baker v. Coughlin,
   77 F.3d 12 (2d Cir. 1996)...........................................................................................22

Bell Atl. Corp. v. Twombly,
   550 U.S. 544 (2007)............................................................................................... 4-5

Black v. Coughlin,
   76 F.3d 72 (2d Cir. 1996)...................................................................................... 17-18

Blandon v. Aitchison,
   No. 17 Civ. 65 (KMK), 2019 WL 1206370 (S.D.N.Y. Mar. 14, 2019) ............................... 8-9

Brown v. Chambers,
   No. 92 Civ. 7622, 1995 WL 234681 (S.D.N.Y. Apr. 20, 1995), aff'd sub nom.
   Brown v. Chamber, 99 F.3d 402 (2d Cir. 1995)......................................................................10

Chance v. Armstrong,
   143 F.3d 698, 702-03 (2d Cir. 1998) ......................................................................14

Chavis v. Chappius,
   618 F.3d 162 (2d Cir. 2010)......................................................................................5

Colon v. Coughlin,
   58 F.3d 865 (2d Cir. 1995)................................................................................... 17-18

Coronado v. Goord,
   No. 99 Civ. 1674, 2000 WL 1372834 (S.D.N.Y. Sept. 25, 2000)...........................................8

Cortlandt St. Recovery Corp. v. Hellas Telecommunications, S.À.R.L,
   790 F.3d 411 (2d Cir. 2015).....................................................................................5

Daniels v. Williams,
   474 U.S. 327 (1986)...............................................................................................7

Davidson v. Coughlin,
   968 F.Supp. 121 (S.D.N.Y.1997) ...........................................................................16

De Jesus v. Sears, Roebuck & Co.,
    87 F.3d 65 (2d. Cir. 1996)............................................................................5

Farid v. Ellen,
    593 F.3d 233 (2d Cir. 2010)........................................................................17

Farmer v. Brennan,
    511 U.S. 825 (1994)............................................................................ 6-7, 9

Fernandez v. N.Y. City Dep't of Correction,
    No. 08 Civ. 4294, 2010 WL 1222017 (S.D.N.Y. Mar. 29, 2010) ...........................7

Garcia v. S.U.N.Y. Health Scis. Ctr. of Brooklyn,
    280 F.3d 98 (2d Cir. 2001).........................................................................23

Gonzalez v. City of Schenectady,
    728 F.3d 149 (2d Cir. 2013).......................................................................20

Harris v. Miller,
    818 F.3d 49 (2d Cir. 2016).........................................................................12

Hathaway v. Coughlin,
    99 F.3d 550 (2d Cir.1996)...........................................................................6

Hayes v. N.Y.C. Dep't of Corr.,
    84 F.3d 614 (2d Cir. 1996)....................................................................... 6-7

Hill v. Curcione,
    657 F.3d 116 (2d Cir. 2011)................................................................... 14-15

Hunter v. Bryant,
    502 U.S. 224 (1991)................................................................................20

Kentucky v. Graham,
    473 U.S. 159 (1985)................................................................................23

Makarova v. United States,
    201 F.3d 110 (2d Cir. 2000)........................................................................5

Moore v. Vega,
    371 F.3d 110 (2d Cir.2004)........................................................................20

Parris v. New York State Dep't Corr. Servs.,
    947 F. Supp. 2d 354 (S.D.N.Y. 2013)...........................................................8

Papasan v. Allain,
    478 U.S. 265 (1986).................................................................................5

Pearson v. Callahan,
    555 U.S. 223 (2009)............................................................................. 19-20

Poe v. Leonard,
    282 F.3d 123 (2d Cir. 2002)...................................................................22

Polk Cnty. v. Dodson,
    454 U.S. 312 (1981)...............................................................................17

Reichle v. Howards,
    566 U.S. 658 (2012)...............................................................................20

Richardson v. Goord,
    347 F.3d 431 (2d Cir. 2003)...................................................................17

Salahuddin v. Goord,
    467 F.3d 263 (2d Cir. 2006)............................................................. 13-14

Scott v. Coughlin,
    344 F.3d 282 (2d Cir.2003).............................................................12tang

Smith v. Carpenter,
    316 F.3d 178 (2d Cir. 2003)............................................................. 13-14

Spavone v. New York State Dep't of Corr. Servs.,
    719 F.3d 127 (2d Cir. 2013)............................................................13, 20

Tangreti v. Bachmann,
    983 F.3d 609 (2d Cir. 2020).............................................................. 17-18

Velasquez v. Bankich,
    No. 97 Civ. 8424, 2000 WL 1568326 (S.D.N.Y. Oct. 19, 2000) ........................................7, 10

White v. Pauly,
    __ U.S. __, 137 S.Ct. 548 (2017)..................................................... 19-20

Williams v. Goord,
    111 F.Supp.2d 280 (S.D.N.Y.2000)......................................................16

Williams v. Greifinger,
    97 F.3d 699 (2d Cir.1996)......................................................................16

Wilson v. Seiter,
    501 U.S. 294 (1991)...............................................................................14

Wright v. Goord,
    554 F.3d 255 (2d Cir. 2009)...................................................................12

**CONSTITUTIONS**

U.S. CONST. amend. IV ................................................................................30

U.S. CONST. amend. VIII ........................................................................ passim

U.S. CONST. amend. XI ............................................................................23

**FEDERAL STATUTES**

42 U.S.C.
    § 1983 ............................................................................................ passim

**RULES**

Federal Rules of Civil Procedure
    Rule 12(b)(1) ..................................................................................1, 5
    Rule 12(b)(6) ................................................................................ 1, 4-5

**STATE STATUTES**

N.Y. Correct. Law § 24 ............................................................................22

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
MALIK L. BROWN,                                             :
                                                           :
                                  Plaintiff,               :
                                                           :
                  - against -                              :    Case No. 21 Civ. 214 (CS)
                                                           :
STEPHEN URBANSKI, ISSA YUNES, JOSEPH                       :
DEACON, MARK DELBIANCO, ALEXANDER                         :
MINARD, BRENDAN WALSH, DANIELLE CEBRON,                   :
ANTHONY ANNUCCI,                                          :
                                                           :
                                  Defendants.             :
------------------------------------------------------------------------X

## DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO DISMISS THE FIRST AMENDED COMPLAINT

Defendants Deputy Superintendent of Security Stephen Urbanski, Correction Officer Issa Yunes, Correction Sergeant Joseph Deacon, Correction Officer Mark DelBianco, Correction Officer Alexander Minard, Correction Officer Brendan Walsh, Nurse Danielle Cebron, and Acting Commissioner Anthony Annucci (collectively "Defendants")[1], by their attorney, Letitia James, Attorney General, State of New York, respectfully submit this memorandum of law in support of their motion to dismiss the First Amended Complaint ("FAC") (ECF No. 30) pursuant to Rule 12(b)(1) and Rule 12(b)(6) of the Federal Rules of Civil Procedure.

## PRELIMINARY STATEMENT

Malik Brown, a pro se plaintiff, is an incarcerated individual currently in the custody of the New York State Department of Corrections and Community Supervision ("DOCCS"). Plaintiff brings this action against Defendants, who are employees of DOCCS, pursuant to 42 U.S.C. Section 1983, alleging various Eighth Amendment claims arising from a physical

---

[1] The FAC does not name or refer to claims against Deputy Superintendent Sharon Frost or Superintendent Emily Williams as defendants, who had been included in the original Complaint.

altercation with another incarcerated individual in which he was involved on June 14, 2020 at Fishkill Correctional Facility ("Fishkill").

Defendants now move to dismiss the First Amended Complaint in its entirety for failure to state a claim and lack of subject matter jurisdiction.  After having the opportunity to review the Defendants' pre-motion conference letter and participating in the Court's conference in anticipation of Defendants' motion to dismiss the original complaint, Plaintiff amended his allegation.  Yet the FAC suffers from the same defects that Defendants had identified in the original Complaint.  The FAC still does not include allegations supporting the personal involvement of Deputy Superintendent Urbanski, CO Minard, CO Walsh, or Acting Commissioner Annucci in any purported constitutional violation.  In addition, the FAC fails to allege facts sufficient to establish that Plaintiff's assault by another incarcerated individual was the result of deliberate indifference by any prison official, because the factual allegations do not support the requisite subjective intent.  In addition, the allegations fail to indicate that any force used to separate Plaintiff from his assailant was subjectively malicious or sadistic, rather than good-faith effort to restore discipline in the midst of a physical altercation between two incarcerated individuals in the recreation yard of the correctional facility.  Further, the FAC does not state a claim for medical deliberate indifference against Nurse Cebron, who, according to the allegations, treated Plaintiff after a short delay and before he was sent to an outside hospital for further emergency care.  Nor does the FAC support a claim that any Defendant completely deprived him of any meaningful exercise.  Defendants are also entitled to qualified immunity because they could not have been aware that their actions violated any clearly established right of Plaintiff.  In addition, to the extent that Plaintiff intended to bring any state law claims, they are barred under New York Correction Law Section 24, and should be dismissed.  Finally,

Plaintiff's claims against the defendants in their official capacities must be dismissed.

## STATEMENT OF ALLEGATIONS[2]

The allegations arise from an incident on June 14, 2020, in the 21A Keeplock Yard of Fishkill Correctional Facility. See FAC at 6.[3]  While Plaintiff was confined in mechanical restrains, he was assaulted by another incarcerated individual whose mechanical restraints Plaintiff alleges were compromised or insecure. Id.  Plaintiff, who was serving a disciplinary sentence in the Special Housing Unit, was given recreation time in a yard with a number of other incarcerated individuals who were also serving time in the Special Housing Unit. See id.

Plaintiff claims that the nonparty incarcerated individual's mechanical restraints were compromised or insecure due to an officer's negligence in failing to secure the restraints. See id. Plaintiff alleges that this individual "roamed" the keeplock yard for approximately ten minutes with an insecure waist chain. See id. at 8.  Eventually, the nonparty incarcerated individual used his waist chain to strike Plaintiff a number of times, resulting in a number of injuries to Plaintiff. See id. at 6-7.

Plaintiff claims that CO Yunes "stood and watched [Plaintiff's] assault he did not attempt to administer any oleoresin capsicum spray this officer was close to my assault and did nothing to help me fend off my attacker/prevent any further injury under his supervision.  I was left to fend for myself in a life or death situation." Id. at 6.  Plaintiff also claims that Sergeant Deacon, who was the recreation supervisor, "watched my assault from beg[ining] to the end." Id.

---

[2] This Statement of Allegations is based upon the allegations set forth in the Complaint.  The non-conclusory factual allegations therein are accepted as true solely for the purpose of the instant motion.

[3] All citations to the FAC will correspond to the ECF pagination. Plaintiff will be provided with a copy of the ECF paginated FAC with the motion papers.

Plaintiff claims that CO DelBianco "exposed my open wounds to the chemicals of oleoresin capsicum spray at the order of Sergeant Deacon." Id. at 7.  Plaintiff also alleges that CO Minard and CO Walsh "forseen [sic] the assault before [Plaintiff]." Id.

Plaintiff further claims that Sergeant Deacon, CO DelBianco, CO Minard, and CO Walsh wrote false reports to cover up their negligence. See id. at 6-7.

Plaintiff alleges that Nurse Cebron "failed to properly examine [him]." Id. at 8.  Plaintiff claims that he was not examined until twenty minutes after he was brought to medical and almost an hour after he was assaulted. Id.  The FAC also alleges that his injuries were not treated for almost an hour and that the severity of his injuries was not taken seriously. Id.  Plaintiff was then sent to the hospital for his wounds. See id. at 9; 24-25.  Plaintiff claims that Nurse Cebron then falsified her report. See id. at 9.

Plaintiff alleges that Acting Commissioner Annucci was responsible because he "fail[ed] to supervise and oversee the executive decisions" at Fishkill. Id. at 9. Plaintiff contends that Acting Commissioner Annucci was negligent and clearly careless of his duties. See id.

## STANDARD OF REVIEW

To survive a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, a complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  An allegation must be "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Iqbal, 556 U.S. at 678.  A claim will only have "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory

statements" are not entitled to a presumption of truth and must be discounted. Id. at 678; see also Twombly, 550 U.S. at 555 (a court is "'not bound to accept as true a legal conclusion couched as a factual allegation'" (quoting Papasan v. Allain, 478 U.S. 265, 286 (1986))); accord De Jesus v. Sears, Roebuck & Co., 87 F.3d 65, 70 (2d. Cir. 1996) ("A complaint which consists of conclusory allegations unsupported by factual assertions fails even the liberal standard of Rule 12(b)(6).") (quotation marks and citation omitted). However, as to any "well-pleaded factual allegations, a court should assume their veracity and determine whether they plausibly give rise to an entitlement of relief." Iqbal, 556 U.S. at 678. Although pro se pleadings are entitled to liberal construction, the Court "cannot invent factual allegations that he has not plead." Chavis v. Chappius, 618 F.3d 162, 170 (2d Cir. 2010). If the plaintiff has not "nudged [his] claims across the line from conceivable to plausible, [his] complaint must be dismissed." Twombly, 550 U.S. at 570.

On a Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction, "[t]he plaintiff bears the burden of "alleg[ing] facts that affirmatively and plausibly suggest that it has standing to sue." Cortlandt St. Recovery Corp. v. Hellas Telecommunications, S.À.R.L, 790 F.3d 411 (2d Cir. 2015); see also Makarova v. United States, 201 F.3d 110, 113 (2d Cir. 2000) ("A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it."). A court must "accept as true all material allegations of the complaint[ ] and . . . construe the complaint in favor of the complaining party." See Cortlandt, 790 F.3d at 417. In deciding a Rule 12(b)(1) motion, the court may also rely on evidence outside the complaint. Id.

**ARGUMENT**

**POINT I**

**THE FAC FAILS TO STATE A CLAIM FOR DELIBERATE INDIFFERENCE WITH REGARD TO PLAINTIFF'S ASSAULT BY ANOTHER INCARCERATED INDIVIDUAL**

The FAC should be dismissed because Plaintiff's allegations fail to support the existence of any culpable intent sufficient to establish deliberate indifference by the Defendants in failing to protect Plaintiff, and therefore there is no deprivation sufficient to implicate the United States Constitution.

The Eighth Amendment "requires prison officials to take reasonable measures to guarantee the safety of inmates in their custody." Hayes v. N.Y.C. Dep't of Corr., 84 F.3d 614, 620 (2d Cir. 1996) (citing Farmer v. Brennan, 511 U.S. 825, 844-45 (1994)). "It is not, however, every injury suffered by one prisoner at the hands of another that translates into constitutional liability for prison officials responsible for the victim's safety." Farmer, 511 U.S. at 834. Instead, to state a cognizable constitutional claim, an incarcerated individual "must allege actions or omissions sufficient to demonstrate deliberate indifference; mere negligence will not suffice." Hayes, 84 F.3d at 620.

The deliberate indifference standard "embodies both an objective and a subjective prong." Hathaway v. Coughlin, 99 F.3d 550, 553 (2d Cir.1996). In Hayes, the Second Circuit summarized the two-part test for deliberate indifference: "First, the plaintiff must demonstrate that he is incarcerated under conditions posing a substantial risk of serious harm. Second, the plaintiff must demonstrate that the defendant prison officials possessed sufficient culpable intent." Hayes, 84 F.3d at 620 (citing Farmer, 511 U.S. at 834). To establish sufficient culpable intent, the Plaintiff must plead facts establishing that an official "has knowledge that an inmate

6

faces a substantial risk of serious harm and he disregards that risk by failing to take reasonable measures to abate the harm." Id.  The plaintiff "must allege actions or omissions sufficient to demonstrate deliberate indifference; mere negligence will not suffice." Hayes, 84 F.3d at 620; see also Daniels v. Williams, 474 U.S. 327, 331 (1986) (denying a constitutional due process claim where an incarcerated individual fell and injured his ankle due to alleged negligent conditions on a staircase).  In Farmer, the Supreme Court described, as an example, "evidence showing that a substantial risk of inmate attacks was 'longstanding, pervasive, well-documented, or expressly noted by prison officials in the past, and the circumstances suggest that the defendant-official being sued had been exposed to information concerning the risk and thus 'must have known' about it . . . .'" 511 U.S. at 842.  Accordingly, "[a]bsent clear notice of a risk of harm to the prisoner, courts routinely deny [Eighth Amendment] claims based upon surprise attacks." Fernandez v. N.Y. City Dep't of Correction, No. 08 Civ. 4294, 2010 WL 1222017, at *8 (S.D.N.Y. Mar. 29, 2010) (internal quotation marks, citations and alteration marks omitted); see also Velasquez v. Bankich, No. 97 Civ. 8424, 2000 WL 1568326, at *2 (S.D.N.Y. Oct. 19, 2000) (holding "[a] one-time altercation between two inmates, even one recorded in the daily log, is not sufficient" to "satisfy the subjective component of a deliberate indifference inquiry") (quoting Farmer, 511 U.S. at 842-43).

Here, Plaintiff fails to provide factual allegations in the FAC to support an inference of deliberate indifference to a substantial risk of serious harm arising from the failure to secure incarcerated individuals' restraints.  Further, while Plaintiff alleges that the other individual "roamed" the recreation yard for approximately ten minutes with an unsecure restraint, Plaintiff's description does not indicate how the status of the restraints would have been clear to any Defendant, nor why any Defendant would be aware that the individual was a risk to Plaintiff

merely because he was not in waist restraints. Nor does Plaintiff actually allege that any Defendant actually had personal knowledge of the individual's unsecured restraints, yet disregarded the risk.

Plaintiff does not allege that any Defendant was aware of any acrimonious history between Plaintiff and his alleged assaulter which may have made the Defendant aware of a specific risk to Plaintiff if the other individual was permitted to be unrestrained in the same keeplock yard as Plaintiff. While the FAC includes a conclusory allegation that CO Minard and CO Walsh had "foreseen the assault before," there is no factual allegation supporting this conclusion. See FAC at 7. Instead, plaintiff appears to claim a substantial risk of serious harm based on a general risk of harm to all incarcerated individuals at a facility. Where a claim is based on a general risk, "a plaintiff must allege that the defendants knew of a history of prior inmate-on-inmate attacks similar to the one suffered by the plaintiff and that the measures they should have taken in response to such prior attacks would have prevented the attack on the plaintiff." Parris v. New York State Dep't Corr. Servs., 947 F. Supp. 2d 354, 363 (S.D.N.Y. 2013) (citing Coronado v. Goord, No. 99 Civ. 1674, 2000 WL 1372834, at *6 (S.D.N.Y. Sept. 25, 2000); see also Blandon v. Aitchison, No. 17 Civ. 65 (KMK), 2019 WL 1206370, at *7 (S.D.N.Y. Mar. 14, 2019) (to state a claim for a general risk of harm, a plaintiff must plead "that the defendants knew of a history of prior inmate-on-inmate attacks similar to the one suffered by the plaintiff and that the measures they should have taken in response to such prior attacks would have prevented the attack on the plaintiff" and that "courts typically require specific allegations of a pattern of analogous inmate-on-inmate attacks that would make the attack suffered by the plaintiff foreseeable.") (emphasis added).

The FAC points to no prior incidents of assaults, much less to any specific and similar

incidents occurring prior to June 14, 2020, which would have established a serious risk to the safety of incarcerated individuals resulting from a lack of restraints in the keeplock yard.  The FAC lacks any factual allegations of prior incidents in the keeplock yard, or in situations where some individuals were restrained and others were not during recreation.  Nor does Plaintiff allege that Defendants were deliberately indifferent because they left a dangerous area unsupervised. Indeed, Plaintiff acknowledges that the area was monitored by approximately six security staff, who ultimately did intervene after the alleged assault began. See FAC at 6-8.  Instead, Plaintiff alleges nothing more than a surprise attack, which does not establish that the Defendants violated any of his constitutional rights.

Because the FAC does not provide any specific identifying information regarding any previous incidents of a similar nature, Plaintiff has not pleaded factual allegations showing that the risk of injury to an incarcerated individual was "longstanding, pervasive, well-documented, or expressly noted by prison officials in the past, and the circumstances suggest that the defendant-official[s] being sued had been exposed to information concerning the risk." Farmer, 511 U.S. at 842; see also Blandon, 2019 WL 1206370, at *7.  Therefore, any claim based on deliberate indifference prior to the start of the assault should be dismissed, because Plaintiff fails to allege that any Defendant was actually aware of any risk to Plaintiff, yet consciously chose to disregard that risk.

## POINT II

### ANY ALLEGED DELAY IN INTERVENING IN THE ALLEGED ASSAULT CANNOT FORM THE BASIS OF A CONSTITUTIONAL VIOLATION

Plaintiff also alleges that CO Yunes and Sergeant Deacon observed the assault, but failed to intervene immediately to protect Plaintiff. See FAC at 6-7.  However, a short delay before

security staff intervened in an altercation between two incarcerated individuals in a recreation

yard does not support a constitutional violation, especially where Plaintiff concedes that officers

did ultimately intervene and bring the assault to an end.

It is well-established that "[p]rison officials have no duty to put their own safety at risk to

stop an altercation between inmates," Brown v. Chambers, No. 92 Civ. 7622, 1995 WL 234681,

at *4 (S.D.N.Y. Apr. 20, 1995), aff'd sub nom. Brown v. Chamber, 99 F.3d 402 (2d Cir. 1995),

and that "the constitution [only] imposes a standard of human decency, not superhuman courage."

Velasquez, 2000 WL 1568326, at *3 (holding "[c]orrection officers are not required to risk their

own welfare in order to protect an inmate") (citations and quotations omitted).

According to Plaintiff's own allegations, he was assaulted in the recreation yard by

another incarcerated individual who was using his waist restraints as a weapon. See id. at 6-7.

Plaintiff claims that CO Yunes "was close by and did nothing to help fend off [the] attacker," but

the allegations do not indicate any relevant factor as to whether his intervention would have been

reasonable, such as the amount of time of the delay, the proximity of other officers, the number

of other incarcerated individuals in the area, or what equipment CO Yunes had access to. See id.

at 6.  Similarly, Plaintiff alleges that Sergeant Deacon watched the assault from beginning to end

without personally intervening, without further elaboration. See id.  Instead, Plaintiff merely

alleges that CO Yunes and Sergeant Deacon were present and their failure to immediately throw

themselves into the fray regardless of the circumstances establishes a constitutional violation.

But such a holding would base liability on a bald second guess of defendants' judgment in the

timing of their intervention, suggesting that correctional staff risk their own wellbeing and

display a level of superhuman courage that the Constitution does not require. See Brown, 1995

WL 234681, at *4; Velasquez, 2000 WL 1568326, at *3.  The allegations in the FAC are simply

insufficient to establish a claim that supposed failure of CO Yunes or any other Defendant to immediately jump into an altercation involving two incarcerated individuals and a weapon in the middle of the keeplock yard was a conscious disregard of a risk to the safety of incarcerated individuals.  Indeed, had CO Yunes or another Defendant rashly intervened and been overpowered, the risk could have immediately become much greater to all involved.  Further, Plaintiff's claim fails because, as Plaintiff acknowledges, after that assault commenced, additional staff responded, intervened, and ended the assault.  See FAC at 6-7.  Thus, while Plaintiff alleges that Defendants did not intervene immediately upon commencement of the assault, he concedes that they did not permit the assault to continue unabated.  In sum, the issue not whether there was deliberate indifference resulted in a failure to intervene, but whether there was deliberate indifference in the timing of the intervention that occurred, and the FAC does not allege facts that plausibly support the existence of this.

## POINT III

### THE ALLEGATIONS FAIL TO SUPPORT THE SUBJECTIVE ELEMENT OF AN EXCESSIVE FORCE CLAIM

Plaintiff's claim that CO DelBianco used oleoresin capsicum ("OC spray") at Sergeant Deacon's orders is insufficient to state a claim against either Defendant for excessive force under the Eighth Amendment given the circumstances alleged.  While Plaintiff contends that the use of OC spray was unnecessary, the allegations make clear that it was used while officers intervened in an attempt to prevent another incarcerated individual from continuing to assault Plaintiff by swinging and striking him with his waist restraint chain.  See FAC at 6-7.  Thus, the facts of the FAC establish that the force used was applied in a good faith effort to restore discipline, and cannot form the basis for an Eighth Amendment excessive force claim.

A claim of cruel and unusual punishment in violation of the Eighth Amendment has two

components: one subjective, focusing on the defendant's motive for his conduct, and the other objective, focusing on the conduct's effect. Wright v. Goord, 554 F.3d 255, 268 (2d Cir. 2009). The subjective component of the claim requires a showing that the defendant "had the necessary level of culpability, shown by actions characterized by 'wantonness'" in light of the particular circumstances surrounding the challenged conduct. Id. When prison officials are accused of using excessive force, the "wantonness" issue turns on whether "force applied was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." Id. The determination of subjective intent turns on the context of the force used:

> To determine whether defendants acted maliciously or wantonly, a court must examine several factors including: the extent of the injury and the mental state of the defendant, as well as "the need for the application of force; the correlation between that need and the amount of force used; the threat reasonably perceived by the defendants; and any efforts made by the defendants to temper the severity of a forceful response.

Harris v. Miller, 818 F.3d 49, 63 (2d Cir. 2016) (quoting Scott v. Coughlin, 344 F.3d 282, 291 (2d Cir.2003).

Here, the FAC fails to support the necessary subjective element of an Eighth Amendment excessive force claim. The only use of force alleged of Defendants was the application of OC spray, which is alleged to have occurred in the context of restoring order in a dangerous situation. See FAC at 6-7. The use of OC spray occurred during a physical altercation between two incarcerated individuals in the keeplock yard where an incarcerated individual was swinging and striking Plaintiff repeatedly with a chain and causing Plaintiff injuries. See id. The allegations of the FAC make clear that the use of OC spray to encourage the incarcerated individuals to cease and separate was appropriate and warranted. Indeed, elsewhere in the FAC, Plaintiff apparently faults CO Yunes for not having intervened in the assault by using OC spray. Thus, the factual allegations here cannot support an inference that CO DelBianco or Sergeant

Deacon were subjectively culpable, because the context alleged demonstrates that the use of OC

spray was appropriate and necessary to attempt to restore discipline.  Plaintiff alleges no facts

supporting any inference to the contrary.  In any event, the factual allegations of the FAC show

that the use of the OC spray was a reasonable and appropriate response to an ongoing altercation

between incarcerated individuals that would allow defendants to break up the fight without

inflicting serious bodily harm on the participants or jeopardizing the health and safety of the

intervenors.

Therefore, Plaintiff's claim of excessive force under the Eighth Amendment fails to state

a claim and should be dismissed.

## POINT IV

### PLAINTIFF FAILS TO STATE A CLAIM OF DELIBERATE INDIFFERENCE TO HIS MEDICAL NEEDS

While Plaintiff alleges Nurse Cebron was deliberately indifferent to his serious medical

needs, the Court should dismiss the claim because, based on Plaintiff's own allegations and

submissions of relevant medical records, Plaintiff was not actually deprived of care and the

allegations do not support the requisite subjective intent on the part of Nurse Cebron.

While the Eighth Amendment forbids the deliberate indifference to serious medical needs

of prisoners, "not every lapse in prison medical care will rise to the level of a constitutional

violation." Smith v. Carpenter, 316 F.3d 178, 184 (2d Cir. 2003).  Rather, to state a cognizable

claim for constitutionally inadequate medical care under the Eighth Amendment, a prisoner must

plead two requirements. Salahuddin v. Goord, 467 F.3d 263, 279 (2d Cir. 2006).

First, there is an objective requirement that "the alleged deprivation of adequate medical

care must be 'sufficiently serious.'" Spavone v. New York State Dep't of Corr. Servs., 719 F.3d

127, 138 (2d Cir. 2013).  To satisfy the objective requirement, "the alleged deprivation must be

sufficiently serious, in the sense that a condition of urgency, one that may produce death, degeneration, or extreme pain exists." Hill v. Curcione, 657 F.3d 116, 122 (2d Cir. 2011).  Only "deprivations denying the minimal civilized measure of life's necessities are sufficiently grave to form the basis of an Eighth Amendment violation." Salahuddin, 467 F.3d at 279 (quoting Wilson v. Seiter, 501 U.S. 294, 298 (1991)).  Further, in cases where a deprivation of care is based upon a delay in treatment rather than a wholesale denial of care, the seriousness inquiry is narrowed to focus on "the challenged delay or interruption in treatment rather than the prisoner's underlying medical condition alone." Smith, 316 F.3d at 185 (emphasis in original).  The inquiry into whether delayed treatment is sufficiently serious is decided by the effect of the delay, by taking into account "the seriousness of the medical need, deciding whether the delay worsened the medical condition, and considering the reason for the delay." Id. at 186 (citing Chance v. Armstrong, 143 F.3d 698, 702-03 (2d Cir. 1998)).

Second, a plaintiff must also plead a subjective requirement that the defendant acted or failed to act with deliberate indifference while actually aware of a substantial risk that serious harm would result to the incarcerated individual. See id.

In this case, Plaintiff has failed to allege either a sufficiently serious deprivation or that Nurse Cebron was subjectively deliberately indifferent.  Because the allegations do not satisfy either requirement of an Eighth Amendment claim for deliberate indifference to medical needs, Plaintiff's claim against Nurse Cebron should be dismissed.

Plaintiff here does not allege a complete denial of care, but instead claims that there was a delay of approximately one hour between when he was assaulted and when he was examined by Nurse Cebron. See FAC at 8.  As an initial matter, Plaintiff does not allege facts indicating that the delay was attributable to Nurse Cebron, or that Nurse Cebron was aware of Plaintiff's

14

injuries but refused to treat them during that time.  In any case, Plaintiff includes no allegations indicating that this one hour delay between the assault and his medical examination resulted in any worsening of his medical condition.  Plaintiff then contends that Nurse Cebron did not adequately evaluate his medical needs, but acknowledges that he was sent to the hospital for further care.  See id. at 8-9.  The decision to send Plaintiff to an outside hospital for emergency care is evidence of anything but deliberate indifference to his medical needs.  In any event, Plaintiff does not allege that there was any substantial risk of serious harm during the brief delay from Nurse Cebron's examination until Plaintiff was treated at the outside hospital.  To the extent that Plaintiff contends that Nurse Cebron's decision to delegate care to a hospital rather than personal treat Plaintiff established a constitutional violation, it is well-established that "a prisoner does not have the right to choose his medical treatment as long as he receives adequate treatment."  Hill, 657 F.3d at 123.  Nurse Cebron's decision to have Plaintiff treated at an outside hospital clearly does not support a state of mind of deliberate recklessness to Plaintiff's medical needs.  Because Nurse Cebron arranged for Plaintiff to receive emergency treatment at an outside hospital, there is no evidence that she had a sufficiently culpable state of mind with regard to Plaintiff's medical needs.

Therefore, because the FAC indicates that Nurse Cebron arranged for Plaintiff's medical care at an outside facility and there is no allegation that the alleged delay resulted in any harm or worsening of Plaintiff's medical condition, the medical deliberate indifference against Nurse Cebron should be dismissed.

## POINT V

### THE FAC FAILS TO STATE A CLAIM FOR DEPRIVATION OF EXERCISE

To the extent that Plaintiff intended to allege a separate claim for deprivation of exercise,

the facts alleged are insufficient to support a constitutional claim.  Plaintiff alleges only that he was not given one hour of unrestrained recreation time.

"[E]xercise is one of the basic human needs protected by the Eighth Amendment." Williams v. Goord, 111 F.Supp.2d 280, 292 (S.D.N.Y.2000) (citing Williams v. Greifinger, 97 F.3d 699, 704 (2d Cir.1996)).  However, a deprivation of exercise amounts to a constitutional violation only where an incarcerated individual is denied "all meaningful exercise" for a substantial period of time.  See Davidson v. Coughlin, 968 F.Supp. 121, 129 (S.D.N.Y.1997).  In determining whether an exercise deprivation rises to this level, a court may consider: (1) the duration of the deprivation; (2) the extent of the deprivation; (3) the availability of other out of cell activities; (4) the opportunity for in-cell exercise; and (5) the justification for the deprivation. See Williams, 111 F.Supp.2d at 291; Amaker v. Goord, No. 98 Civ. 3634(JGK), 1999 WL 511990, at *6 (S.D.N.Y. July 20, 1999) (citing Davidson, 968 F.Supp. at 130).

Here, Plaintiff contends only that he was not given "an hour of unrestrained rec" for thirty-seven days.  See FAC at 6.  Plaintiff does not explain how the conditions or duration of the recreation time that he did receive, or how being restrained during this recreation affected his ability to exercise.  Nor does he allege deprivation of any other out of cell activities.  He does not describe the possibility or inadequacy of any alternatives, such as in-cell exercise.  Therefore, Plaintiff has failed to address the majority of the factors relevant to an exercise deprivation claim.  See Williams, 111 F.Supp.2d at 291.  The allegation that Plaintiff does include in the FAC are insufficient to support an inference that Plaintiff was described of exercise at all, let alone subject to a complete deprivation of "all meaningful exercise" that would be necessary to support a constitutional deprivation.  See Davidson, 968 F.Supp. at 129.

Therefore, to the extent that Plaintiff intended to bring a claim for deprivation of exercise,

the FAC fails to state a claim and should be dismissed.

**POINT VI**

**DEPUTY SUPERINTENDENT URBANSKI, CO MINARD, CO WALSH,
OR ACTING COMMISSIONER ANNUCCI SHOULD BE DISMISSED
FOR LACK OF PERSONAL INVOLVEMENT**

Deputy Superintendent Urbanski, CO Minard, CO Walsh, and Acting Commissioner

Annucci should all be dismissed because the FAC does not include allegations supporting their

personal involvement in any purported constitutional violation.

"It is well settled in this Circuit that personal involvement of defendants in alleged

constitutional deprivations is a prerequisite to an award of damages under § 1983." Farid v.

Ellen, 593 F.3d 233, 249 (2d Cir. 2010).  In addition, "In a § 1983 suit or a Bivens action—

where masters do not answer for the torts of their servants—the term 'supervisory liability' is a

misnomer." Iqbal, 556 U.S. at 677.  If the defendant is a supervisory official, a mere "linkage" to

the unlawful conduct through the chain of command is insufficient to show his or her personal

involvement in that unlawful conduct. See Polk Cnty. v. Dodson, 454 U.S. 312, 325 (1981);

Richardson v. Goord, 347 F.3d 431, 435 (2d Cir. 2003).  Supervisory officials may not be held

liable merely because they held a position of authority. Black v. Coughlin, 76 F.3d 72, 74 (2d

Cir. 1996).

While previously, the Second Circuit had employed special rules for supervisory officials

allowing supervisory personnel to be considered "personally involved" if they fell into one of

five special categories of conduct, Colon v. Coughlin, 58 F.3d 865, 873 (2d Cir. 1995), the

Second Circuit recently rejected those categories. Tangreti v. Bachmann, 983 F.3d 609, 618 (2d

Cir. 2020).  The Supreme Court in Iqbal explicitly rejected any argument that "a supervisor's

mere knowledge of his subordinate's discriminatory purpose amounts to the supervisor . . .

violating the Constitution." 556 U.S. at 677.  Under Iqbal, "purpose rather than knowledge" is

required to impose liability on an official charged with violations arising from his or her superintendent responsibilities." Id.

In Tangreti, the Second Circuit held that, following the Supreme Court's decision in Iqbal, there is no special rule for supervisory liability. Therefore, the factors previously set forth in Colon, 58 F.3d at 873, are no longer applicable, and "[i]nstead, a plaintiff must plead and prove 'that each Government-official defendant, through the official's own individual actions, has violated the Constitution.'" Tangreti, 983 F.3d at 618 (quoting Iqbal, 556 U.S. at 676). The Second Circuit held that now, "[t]he factors necessary to establish a [§ 1983] violation will vary with the constitutional provision at issue because the elements of different constitutional violations vary. The violation must be established against the supervisory official directly." Id. (citations omitted).

In this matter, Plaintiff fails to establish the personal involvement of Deputy Superintendent Urbanski, CO Minard, CO Walsh, and Acting Commissioner Annucci in any purported constitutional violation. The FAC is generally devoid of any link between Acting Commissioner Annucci and the alleged incident other than a general and conclusory allegation that Acting Commissioner Annucci failed to supervise and oversee Fishkill due to his position. Event prior to Tangreti, such allegations of liability based solely on an official's position of authority was insufficient. See Black, 76 F.3d at 74.

Similarly, Plaintiff appears to allege that Deputy Superintendent Urbanski was responsible for alleged conditions which Plaintiff claims gave rise to the assault solely based on his position at Fishkill at the Deputy Superintendent for Security, rather than any direct involvement. Plaintiff does not allege that Deputy Superintendent Urbanski was aware of the conditions of Plaintiff's confinement, that Plaintiff ever brought the alleged conditions to Deputy

Superintendent Urbanski's attention, or any other link between Deputy Superintendent Urbanski and Plaintiff's claims.  Therefore, the FAC fails to support Deputy Superintendent Urbankski's personal involvement in any purported constitutional violation.

Finally, CO Minard and CO Walsh are referenced as "foreseen the assault before I as well as Sgt. Deacon but gave false report to cover up the negligence on their behalf" without elaboration.  The FAC does not include any factual allegations supporting their direct involvement, presence, or awareness of any of the constitutional violations claimed.

Because Plaintiff fails to alleged the personal involvement of Deputy Superintendent Urbanski, CO Minard, CO Walsh, and Acting Commissioner Annucci, all claims as against them should be dismissed.

## POINT VII

### IN ANY CASE, PLAINTIFF'S CLAIMS SHOULD BE DISMISSED BECAUSE DEFENDANTS ARE ENTITLED TO QUALIFIED IMMUNITY

In this matter, Plaintiff's claims should be dismissed for the additional reason that the Defendants are entitled to qualified immunity, as the Defendants' actions have not violated any clearly established right.

Qualified immunity is "an immunity from suit rather than a mere defense to liability," the "driving force" for which is a "desire to ensure that insubstantial claims against government officials [will] be resolved prior to discovery." Pearson v. Callahan, 555 U.S. 223, 231 (2009) (quotations omitted).  Qualified immunity "attaches when an official's conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." White v. Pauly, 580 U.S. __, 137 S.Ct. 548, 551 (2017) (internal citations omitted). The Second Circuit has instructed that "[t]he issues on qualified immunity are: (1) whether plaintiff has shown facts making out [a] violation of a constitutional right; (2) if so, whether that

right was 'clearly established'; and (3) even if the right was 'clearly established,' whether it was 'objectively reasonable' for the officer to believe the conduct at issue was lawful." Gonzalez v. City of Schenectady, 728 F.3d 149, 154 (2d Cir. 2013) (citation omitted).

To be clearly established, "a right must be sufficiently clear that every reasonable official would have understood that what he is doing violates that right." Reichle v. Howards, 566 U.S. 658, 664 (2012) (quotations omitted). "Only Supreme Court and Second Circuit precedent existing at the time of the alleged violation is relevant in deciding whether a right is clearly established." Moore v. Vega, 371 F.3d 110, 114 (2d Cir.2004). Even if the circumstances present a violation of a federal right, the defendant is still entitled to qualified immunity if it would not have been clear to a reasonable official that the actions taken violated the plaintiff's clearly established federal rights. See Pearson, 555 U.S. at 231-32. So long as a defendant "has an objectively reasonable belief that his actions are lawful," he "is entitled to qualified immunity." Spavone, 719 F.3d at 135 (quotations omitted).

In addition, the Supreme Court has reiterated "the longstanding principle that clearly established law should not be defined at a high level of generality" and that the clearly established law "must be particularized to the facts of the case." White, 137 S. Ct. at 552 (citations omitted) (vacating circuit court decision where the panel "failed to identify a case where an officer acting under similar circumstances as [the defendant] was held to have violated the Fourth Amendment."). A qualified immunity defense should be decided as early as possible in the litigation, because it is a defense not only to liability but is meant to shield public officials from the burdens of litigation. Hunter v. Bryant, 502 U.S. 224, 227 (1991) (citations omitted).

In this matter, as discussed above, Plaintiff has not alleged facts making out a violation of any constitutional right. However, even if the Court finds that any of Plaintiff's claims support a

prima facie constitutional violation, Defendants are entitled to qualified immunity, because their actions did not violate any clearly established rights. Plaintiff here complains of highly discretionary decisions that occurred in the context of a surprise physical altercation between two incarcerated individuals wherein one individual was striking the other with a chain in the keeplock yard of a prison. Plaintiff contends both that CO Yunes and Sergeant Deacon are liable because they failed to immediately intervene aggressively enough to stop the assault, and also that Sergeant Deacon and CO DelBianco are liable because they intervened too aggressively to stop the assault. However, the law is not clearly established that correction officers may avoid liability only if their balancing of the timing of an intervention in an altercation between two incarcerated individuals and the amount of force used in that intervention is just right. Just as Plaintiff is of two minds on the appropriate course of action here, it is highly likely that reasonable government officials with similar experience as the Defendants may disagree as to the specific course of action called for in this difficult and developing situation. Qualified immunity allows government officials the leeway to make reasonable but mistaken decisions in there discretionary situations where the precise application of a general legal concept may be difficult to determine. Qualified immunity is precisely suited for the instant case, where government officials must act as they reasonably believe is appropriate without concern for liability. In addition, even if Nurse Cebron is entitled to qualified immunity because a reasonable person in her position could not have realized that sending Plaintiff to an outside hospital rather than personally treating his medical needs would violate any clearly established right in the circumstances alleged. Finally, Deputy Superintendent Urbanski, CO Minard, CO Walsh, and Acting Commissioner Annucci are also entitled to qualified immunity because, as discussed in Point VI, the requirement of personal involvement is not clearly established and thus reasonable

officials in their place would not have realized that their conduct would violate a clearly established right. See Poe v. Leonard, 282 F.3d 123, 140–41 (2d Cir. 2002) (holding that qualified immunity applies to the theory of personal involvement, as well as underlying substantive theory); Iqbal, 556 U.S. at 677 (an official may be held accountable only for his own conduct)

Therefore, because the Defendants' alleged acts or omissions did not violate any clearly established rights, they are entitled to qualified immunity, and Plaintiff's claims against them for money damages must be dismissed.

## POINT VIII

### TO THE EXTENT THAT PLAINTIFF INTENDED TO ASSERT STATE LAW CLAIMS, THEY ARE BARRED

To the extent that Plaintiff intended to assert claims against Defendants based in state law, such as medical malpractice or negligence, they fail on jurisdictional grounds, because New York Correction Law Section 24 bars state law claims brought in federal court against employees of DOCCS acting within the scope of their employment. See N.Y. Correct. Law § 24 ("[n]o civil action shall be brought in any court of the state . . . against any officer or employee of [DOCCS] . . . in his or her personal capacity, for damages arising out of any act done or the failure to perform any act within the scope of employment and in the discharge of duties by such officer or employee."); see also Baker v. Coughlin, 77 F.3d 12, 15 (2d Cir. 1996) (holding that Section 24 applies to claims in federal court).  The allegations of the FAC center on Defendants' actions while they were acting within the scope of their employment as prison officials by DOCCS. See FAC at 4-5.  Therefore, any state law claims which Plaintiff intended to allege should be dismissed.

## POINT IX

## ALL CLAIMS ALLEGED AGAINST THE DEFENDANTS IN THEIR OFFICIAL CAPACITY ARE BARRED

Plaintiff specifically notes in the FAC that he intends to bring claims "against all defendants under their individual & pro[f]essional capacity." See FAC at 5.  To the extent that Plaintiff's intends to pursue damages claims against Defendants in their official capacities, Section 1983 claims for money damages against state officials in their official capacities are barred and must be dismissed.  Official-capacity claims generally represent another way of pleading an action against an entity of which an officer is an agent, here the State of New York. To the extent that Plaintiff seeks monetary damages as against the Served Defendants in their official capacities, "he is seeking damages from New York, and the Eleventh Amendment therefore shields them to the same extent that it shields [the state]." Garcia v. S.U.N.Y. Health Scis. Ctr. of Brooklyn, 280 F.3d 98, 107 (2d Cir. 2001); see also Kentucky v. Graham, 473 U.S. 159, 165-66 (1985).  The Eleventh Amendment generally bars a damages action against a State in federal court. See Graham, 473 U.S. 169-70.  Because Plaintiff seeks only money damages in this action, all asserted claims against the State Defendants in their official capacities must be dismissed.

## CONCLUSION

For all of the foregoing reasons, Defendants respectfully request that the Court grant their motion to dismiss the FAC in its entirety.

Dated:  New York, New York
        August 24, 2021

                                            Respectfully submitted,
                                            LETITIA JAMES
                                            Attorney General
                                            State of New York
                                            Attorney for Defendants

By:

_S/ Brendan M. Horan_
Brendan M. Horan
Assistant Attorney General
28 Liberty Street, 18th Floor
New York, New York 10005
212-416-8973
Brendan.Horan@ag.ny.gov