UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------X
 MALIK L. BROWN,       :

            :  Case No. 21 CV. 214 (CS)

      Plaintiff,   :

            :

  -against-      :

            :

STEPHEN URBANSKI,    :

JOSEPH DEACON, and    :

MARK DELBIANCO,     :

            :

      Defendants.  :
-------------------------------------------------------X


## MEMORANDUM OF LAW IN SUPPORT OF THE DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

# TABLE OF CONTENTS

Table of Authorities ........................................................................................................ iii

Preliminary Statement .................................................................................................... 1

Statement of Facts ........................................................................................................... 2

    Plaintiff's Background .............................................................................................. 2

    Subject Incident ...................................................................................................... 3

Argument ....................................................................................................................... 3

    Standard of Review ................................................................................................. 4

    Point I   Plaintiff was not Subjected to Excessive Force ............................................ 5

    Point II  Plaintiff was not Deprived of Exercise in Violation of his Eighth Amendment ..........

           Rights................................................................................................... 10

    Point III  Defendants Are Entitled To Qualified Immunity ....................................... 12

Conclusion .................................................................................................................... 16

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Amaker v. Goord*,
No. 98 Civ. 3634, 1999 WL 511990 (S.D.N.Y. 1999) .......................................................... 11

*Beauvoir v. Falco*,
345 F. Supp. 3d 350 (S.D.N.Y. 2018) .................................................................................. 8

*Berry v. City of New York*,
12-CV-7819, 2014 WL 2158518 (S.D.N.Y. 2014) ............................................................... 9

*Celotex Corp. v. Catrett*,
477 U.S. 317 (1986) ............................................................................................................ 4

*Davidson v. Coughlin*,
968 F. Supp. 121 (S.D.N.Y. 1997) ...................................................................................... 10

*Davis v. State of New York*,
316 F.3d 93 (2d Cir. 2002) .................................................................................................. 4

*Duse v. IBM*,
252 F.3d 151 (2d Cir. 2001) ................................................................................................ 4

*Edwards v. Arnone*,
613 Fed. Appx. 44 (2d Cir. 2015) ........................................................................................ 12

*Edwards v. Quiros*,
986 F.3d 187 (2d Cir. 2021) ................................................................................................ 12

*Gonzalez v. City of Schenectady*,
728 F.3d 149 (2d Cir. 2013) ................................................................................................ 13

*Griffin v. Crippen*,
193 F.3d 89 (2d Cir. 1999) .................................................................................................. 5

*Hudson v. McMillian*,
503 U.S. 1 (1992) ................................................................................................................ 10

*Johnson v. Woods*,
07-CV-1018, 2010 WL 2039164 (N.D.N.Y. 2010) .............................................................. 9

*Jones v. Westchester Cnty.*,
  182 F. Supp. 3d 134 (S.D.N.Y. 2016)..............................................................5-6

*Kulak v. City of New York*,
  88 F.3d 63 (2d Cir. 1996) .................................................................................8

*McLaurin v. New Rochelle Police Officers*,
  373 F. Supp. 2d 385 (S.D.N.Y. 2005).............................................................9

*Monahan v. City of New York*,
  No. 20 Civ. 2610 (PKC), 2022 WL 954463 (S.D.N.Y. Mar. 30, 2022).................9

*Pearson v. Callahan*,
  555 U.S. 223 (2009).............................................................................12, 13, 14

*Pratt v. Nat'l R.R. Passenger Corp.*,
  709 Fed. App'x 33 (2d Cir. 2017)....................................................................5

*Quinones v. Rollison*,
  18-CV-1170, 2020 WL 6420181 (S.D.N.Y. 2020)............................................8

*Scott v. Harris*,
  550 U.S. 372 (2007)...........................................................................................5

*Spavone v. New York State Dep't of Corr. Servs.*,
  719 F.3d 127 (2d Cir. 2013).............................................................................13

*Westinghouse Credit Corp. v. D'Urso*,
  278 F.3d 138 (2d Cir. 2002)..............................................................................4

*White v. Pauly*,
  580 U.S. 73 (2017)...........................................................................................13

*Williams v. City of New York*,
  2007 U.S. Dist. LEXIS 55654 (S.D.N.Y. 2007)...............................................9

*Williams v. Goord*,
  111 F. Supp. 2d 280 (S.D.N.Y.2000).................................................10, 11, 12

## Constitutions

Eighth Amendment ...............................................................................................1, 5

**Rules**

Fed. R. Civ. P 56(a) ....................................................................................................................4

# PRELIMINARY STATEMENT

This memorandum of law in submitted on behalf of Defendants Stephen Urbanski, Joseph Deacon, and Mark Delbianco ("Defendants") in support of their motion for summary judgment pursuant to Federal Rule of Civil Procedure 56.

In this matter, Plaintiff, Malik L. Brown ("Plaintiff"), asserts that on or about June 14, 2020, while incarcerated at Fishkill Correctional Facility ("Fishkill"), his rights under the Eighth Amendment were violated.  Specifically, Plaintiff claims that he was the victim of excessive force when Defendant Correction Sergeant Joseph Deacon and Defendant Correction Officer ("CO") Mark Delbianco, respectively ordered and utilized the use of oleoresin capsicum spray ("OC spray") during an altercation between Plaintiff and incarcerated individual ("I/I") Shawn Collins in the Keeplock 21-A recreation yard of Fishkill.  Plaintiff further alleges that his rights under the Eighth Amendment were violated in that the restraint order to which he was subjected deprived him of his constitutional right to exercise.

The undisputed evidence establishes that Plaintiff's rights under the Eighth Amendment were not violated.  The single application of OC Spray discharged by Defendant Delbianco was used to stop a violent altercation from causing further injury.  Further, Plaintiff fails to demonstrate an injury that resulted from the use of OC spray.

Plaintiff's deprivation of exercise claim against Defendant Urbanski also fails, as the evidence demonstrates that Plaintiff received over two hours of exercise daily while he was subject to a restraint order, during which time his feet were uninhibited from restraints.  In the absence of a clearly established law suggesting a constitutional minimum for unrestrained exercise, Defendant Urbanski should be entitled to qualified immunity on this claim.

## STATEMENT OF FACTS

<u>Plaintiff's Background</u>

In November of 2019, Plaintiff was incarcerated by the New York State Department of Corrections and Community Supervision ("DOCCS") in the Greene Correctional Facility serving a criminal sentence for attempted robbery in the second degree.  <u>See</u> Defendants' Statement of Undisputed Material Facts Pursuant to Fed. R. Civ. P. 56 and Local Civil Rule 56.1 ("Def. 56.1") ¶ 1. On November 5, 2019, Plaintiff allegedly fought other inmates during an altercation. Following that incident, Plaintiff was sentenced to serve time in a special housing unit ("SHU"). <u>Id.</u>, ¶ 2.  On December 27, 2019, Plaintiff was transferred to Fishkill Correctional Facility, and continued to serve time within the SHU.  <u>Id.</u>, ¶ 2. In April of 2020, Plaintiff was transferred into a Keep Lock unit from SHU, as the SHU unit was to be used to isolate COVID-positive I/Is.  <u>Id.</u>, ¶ 3.  Keep Lock is a separate unit within a facility for individuals serving disciplinary sanctions or awaiting the disposition of a disciplinary hearing, generally considered to be less severe than SHU sanctions.  <u>Id.</u>, ¶ 4.

On April 23, 2020, Plaintiff allegedly disobeyed orders from a correction officer in Fishkill's Keep Lock unit and allegedly swung closed fists in an incident which was deemed assaultive in nature.  <u>Id.</u>, ¶¶ 5–6.  The discipline for the incident included a restraint order, which was implemented in May of 2020.  <u>Id.</u>, ¶ 7.  Specifically, Plaintiff's restraint order subjected him to handcuffs and a waist chain during recreation but did not require his legs or feet to be shackled. <u>Id.</u>, ¶ 8.  Plaintiff's restraint order was originally authorized on May 7, 2020 and reauthorized on May 14, 2020, May 28, 2020, June 4, 2020, and June 11, 2020 as a result of Plaintiff's violent history.  <u>Id.</u>, ¶ 9.  At the time of the incident on June 14, 2020, Plaintiff had been subject to the

restraint order for approximately 38 days.  Id., ¶ 9.  Plaintiff received two-and-a-half hours of recreation per day during this time.  Id., ¶ 10.

Subject Incident

On June 14, 2020, around 8:45 AM, approximately nine I/Is under active restraint orders at Fishkill, including Plaintiff and I/I Collins, were escorted into the Keeplock 21-A recreation yard to begin their allocated recreation time.  After walking around the recreation yard for approximately forty-five minutes, at 9:29 AM I/I Collins abruptly struck Plaintiff with his waist chain twice across Plaintiff's mid-section.  Id., ¶ 19.

Within approximately 12 to 14 seconds of the assault beginning, CO Yunes approached I/I Collins and gave several direct orders to stop.  Id., ¶ 20.  I/I Collins ignored these direct orders. Id.  In response to the assault, CO DelBianco responded to the Keeplock 21-A recreation yard within 27 to 28 seconds of I/I Collins' initial strike and can be seen in the video that captured the entire incident, running to intervene in the attack.  Id. ¶ 22.  Because I/I Collins would not stop assaulting Plaintiff, Sergeant Deacon, who is not initially seen on camera, ordered staff to use OC spray to quell the disturbance.  Id. ¶ 23.  Defendant DelBianco used one application of OC spray in the direction of I/I Collins in response to Defendant Deacon's order.  Id. ¶ 24.  After discharging the OC spray, Defendant DelBianco, along with CO Yunes, CO Walsh, and CO Minard, were able to separate I/I Collins and Plaintiff.  Id., ¶ 25.  Plaintiff was immediately escorted by CO Velez to the Fishkill infirmary.  Id., ¶ 26.  Plaintiff was treated at the infirmary for a laceration to the head, bruising to the back of the head, and abrasions to the elbows, knee, and hands.  No injuries caused by the OC Spray were noted or reported.  Id., ¶ 27.

## ARGUMENT

## STANDARD OF REVIEW

In a motion for summary judgment, the Court reviews the evidence presented by the parties to determine whether, viewing the evidence in the light most favorable to the non-moving party and drawing all reasonable factual inferences in that party's favor, the absence of genuine issues of material fact entitles the moving party to judgment as a matter of law.  See Fed. R. Civ. P 56(a); Westinghouse Credit Corp. v. D'Urso, 278 F.3d 138, 145 (2d Cir. 2002).  Defendants moving for summary judgment on the merits of a substantive claim are not required to submit evidence negating plaintiff's claim, but to make a prima facie case by "'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." Celotex Corp. v. Catrett, 477 U.S. 317, 323-25 (1986).  A defendant is entitled to summary judgment if the undisputed facts reveal an absence of sufficient proof as to any essential element of a claim.  See Duse v. IBM, 252 F.3d 151, 158 (2d Cir. 2001).  "[C]onclusory statements, conjecture, or speculation by the party resisting the motion" will not defeat a motion for summary judgment.  Kulak v. City of New York, 88 F.3d 63, 71 (2d Cir. 1996); see Davis v. State of New York, 316 F.3d 93, 100 (2d Cir. 2002) ("The nonmoving party must go beyond the pleadings and by [his or] her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial") (alterations in original) (quoting Celotex, 477 U.S. at 324).

In "certain circumstances, video evidence may be so clear and unambiguous that a court deciding a summary judgment motion may rely solely on the video, and need not afford weigh to conclusory or non-credible assertions that are inconsistent with the 'blatant' video evidence." Monahan v. City of New York, No. 20 Civ. 2610 (PKC), 2022 WL 954463, at *4 (S.D.N.Y. Mar.

30, 2022) (citing <u>Scott v. Harris</u>, 550 U.S. 372, 378-80 (2007)). In <u>Scott</u>, the Court stated that when "parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." <u>Scott</u>, 550 U.S. at 380. <u>See also</u> <u>Pratt v. Nat'l R.R. Passenger Corp.</u>, 709 Fed. App'x 33, 34 (2d Cir. 2017) (finding that "objective video and data evidence furnished by the Defendants on summary judgment was sufficient to overcome all contrary eyewitness testimony and preclude any genuine dispute of material facts . . . .").

## POINT I
## PLAINTIFF WAS NOT SUBJECTED TO EXCESSIVE FORCE

The undisputed evidence demonstrates that Plaintiff was not subjected to excessive force when OC spray was used by CO Delbianco on July 14, 2020. An Eighth Amendment excessive force claim requires "both an objective examination of the conduct's effect and a subjective inquiry into the defendant[s'] motive for the conduct." <u>Jones v. Westchester Cnty.</u>, 182 F. Supp. 3d 134, 150 (S.D.N.Y. 2016) (citation omitted). The subjective examination requires a "showing that the defendant 'had the necessary level of culpability, shown by actions characterized by 'wantonness' in light of the particular circumstances surrounding the challenged conduct.'" <u>Id.</u> (quoting <u>Wright v. Goord</u>, 554 F.3d 255, 268 (2d Cir. 2009)). In an excessive force case, a plaintiff must prove "that prison officials used force 'maliciously and sadistically to cause harm rather than in a good-faith effort to maintain or restore discipline.'" <u>Id.</u> (quoting <u>Boddie v. Schneider</u>, 105 F.3d 857, 862 (2d Cir. 1997)). The objective examination "focuses on the harm done in light of 'contemporary standards of decency,' and the analysis is 'context specific' . . . asking whether 'the deprivation alleged is sufficiently serious, or harmful enough, to reach constitutional dimensions.'" <u>Griffin v. Crippen</u>, 193 F.3d 89, 91 (2d Cir. 1999) (quoting <u>Romano v. Howarth</u>, 998 F.2d 101, 105 (2d Cir.

1993). "Some degree of injury is ordinarily required to state a claim of excessive use of force in violation of the Eighth Amendment . . . though an inmate need not prove 'significant injury' to make out an excessive force claim." Jones, 182 F.Supp.3d at 150 (quoting Griffin, 193 F.3d at 92). Nevertheless, a "'de minimis use of force will rarely suffice to state a constitutional claim.'" Id. (quoting Romano, 998 F.2d at 105).

<u>Defendants' Subjective Motive</u>

In this case, Plaintiff cannot meet either the objective or subjective elements of the Eighth Amendment excessive force analysis. First, an examination of the evidence reveals that no reasonable juror could find that the Defendants' subjective behavior was wanton. As confirmed by the fixed video camera footage which captured this incident in its entirety, the first responding correction officer, CO Yunes, initially issued verbal commands to I/I Collins to stop, prior to engaging physically. 56.1 ¶¶ 20 - 22. When the commands by CO Yunes failed to stop I/I Collins from violently swinging his metal waist chain at Plaintiff, CO Minard and CO Walsh ran to the scene and attempted to restrain I/I Collins from Plaintiff, with Defendant DelBianco immediately behind them. Id. ¶ 24. Beginning at 15:07[1] and continuing through 15:09, Defendant DelBianco can be seen extending his right arm and discharging his OC spray. Id., ¶ 26; see also, **Ex. G**, screenshot, at 15:09. Importantly, and despite Plaintiff's claim that I/I Collins was "subdued already" when the OC spray was discharged,[2] I/I Collins can be seen on top of Plaintiff during this time and does not appear to be separated from Plaintiff until 15:15. Id., ¶ 27; see also, **Ex. G**, screenshot, at 15:09.

---

[1] Please note all timestamp references to the video footage refers to that on the video viewing software rather than the digital time appearing on the video itself.

[2] See **Ex. I,** Pl. Brief in Opp. to Motion to Dismiss, filed June 21, 2021**,** p. 6.

Plaintiff's own interpretation of the video footage fails to raise a genuine issue of fact. When shown the footage of the altercation at his deposition, Plaintiff claimed that Officer DelBianco sprayed him at the video's 15:12 mark and conceded that Officer DelBianco was standing up at the left side of the screen, closer to I/I Collins at this point.

> Q: Okay. So at fifteen twelve –
>
> A: Right there, that–
>
> Q: See one officer's standing all the way to the left of the screen. You believe he sprayed you at this time? Fifteen twelve, is that correct?
>
> A: Yes, because he making a spray motions [sic]. If you look at fifteen twelve, he's making a spray motion like (indicating) . . . And Collins is already stoop–I'm laying on the floor with my stomach, I'm not on my buttock.
>
> Q: Okay. And just to clarify where everyone is at this point, Collins is probably closer to him than you are, correct?
>
> A: Yes.

See Pl. Dep. Tr., p. 71: 23–72:13.

The video footage shows, and no reasonable juror could believe otherwise, that there were no discernable movements that could be associated with using OC spray at this point. However, even if Plaintiff's claim that the parties were not physically separated at 15:12 were true, considering Defendant DelBianco's position at this point (towards the foot of I/I Collins with three COs separating him from the upper body of Plaintiff), the only reasonable conclusion would be that Defendant DelBianco briefly sprayed I/I Collins to neutralize *him*, not Plaintiff. See **Ex. E**, video footage, 15:12; see also, **Ex. H,** screenshot at 15:15.

All other evidence produced in this matter suggests the motives of Sergeant Deacon and Officer DelBianco were to simply stop the altercation that had broken out between I/I Collins and Plaintiff rather than to use pepper spray maliciously or sadistically. The written statements of Sergeant Deacon and Officer DelBianco contained within the Use of Force report conform to the

events seen in the video footage, as do the rest of the officers who responded to the scene and provided written statements. See generally, **Ex. F.** The Investigative Report of the OSI investigation, which was triggered by Plaintiff after claiming he was the subject of excessive force, was deemed unsubstantiated and further found that the responding staff "took the appropriate actions to prevent further assault actions." See **Ex. J.** In response to Plaintiff's written deposition question of "why did you order Officer DelBianco to spray the victim," Sergeant Deacon indicated "I gave staff an order to use O.C. spray because I/I Collins continued resisting while swinging his waist chain and refusing to follow staff orders to lay on the ground." See **Ex. K.** In his response, Officer DelBianco responded to the question "why did you use force?" almost identically: "It's my understanding force was used to quell the fight between I/I Collins and I/I Brown, which continued after the incarcerated individuals failed to respond to Correction Officer Yunes's verbal commands to stop and get on the ground." See **Ex. L.**

Considering the totality of the evidence, especially the video footage, no reasonable jury could believe Plaintiff's claims that he was "bruised and sprayed for 36–37 min." See Ex. I, Pl. Brief in Opp. to Motion to Dismiss, filed June 21, 2021, p. 6. Regardless of exactly when OC spray was used by Defendant DelBianco, the video evidence demonstrates that the order to apply it by Sargent Deacon and the application itself by Defendant Delbianco were objectively reasonable to stop the fight between I/I Collins and Plaintiff. See Quinones v. Rollison, 18-CV-1170, 2020 WL 6420181, at *4-5 (S.D.N.Y. 2020) (finding that the officer defendant was entitled to summary judgment because the plaintiff had "not established a material issue of fact as to the objective element of his excessive-force claim" where the officer defendant used a chemical agent against two inmates who were in the midst of a violent fight with a weapon); Beauvoir v. Falco, 345 F. Supp. 3d 350, 369 (S.D.N.Y. 2018) (granting the defendants summary judgment in a § 1983

case because the "use of the pepper spray . . . was permissible in the context of needing to maintain a baseline of order in the prison system"); <u>Berry v. City of New York</u>, 12-CV-7819, 2014 WL 2158518, at *5-6 (S.D.N.Y. 2014) (granting summary judgment for the defendants on the plaintiff's excessive force claim where the defendant officer used pepper spray to break up a violent fight between incarcerated individuals); <u>Johnson v. Woods</u>, 07-CV-1018, 2010 WL 2039164, at *15-16 (N.D.N.Y. 2010) (holding that the correction officers' actions in using a chemical agent to subdue the inmate were "calculated to ensure safety.").

<u>Plaintiff's Objective Harm</u>

An examination into the objective harm exhibited by Plaintiff demonstrates only a de minimus injury was endured. Plaintiff claims that the OC spray made contact with his "open wounds," but fails to allege any sort of injury that amounted to anything more than temporary discomfort. <u>See</u> Amen. Compl., p. 7. The portion of the Use of Force report documenting Plaintiff's injuries also fails to indicate any injury to Plaintiff that could be reasonably perceived to be caused by OC spray, and the historian writing the report indicates Plaintiff failed to report any additional injuries. <u>See</u> **Ex. D**, p.1. When given an opportunity to explain the extent of his injuries during his deposition, Plaintiff testified only to those injuries caused by the assault of I/I Collins, not the effect of the OC spray. <u>See</u> Pl. Dep. Tr., pp. 86:24.

The temporary discomfort felt by OC spray fails to form the subjective basis for an excessive force claim. <u>See</u> <u>McLaurin v. New Rochelle Police Officers</u>, 373 F. Supp. 2d 385, 394 (S.D.N.Y. 2005) (allegations against defendant officer was not actionable where plaintiff's injuries from the use of mace was temporary discomfort); <u>Williams v. City of New York</u>, 2007 U.S. Dist. LEXIS 55654, *47 (S.D.N.Y. 2007) ("While the use of mace by an officer may, in some circumstances, amount to excessive force, here Williams suffered only the expected side-effects:

temporary discomfort and disorientation") (citing <u>Graham v. Connor</u>, 490 U.S. 386 (1989)). While Plaintiff need not demonstrate a *serious* injury, "the Eighth Amendment's prohibition of 'cruel and unusual' punishments necessarily excludes from constitutional recognition de minimis uses of physical force, provided that the use of force is not of a sort "repugnant to conscious of mankind." <u>Hudson v. McMillian</u>, 503 U.S. 1, 9–10 (1992) (quoting <u>Whitley v. Albers</u>, 475 U.S. 312, 327 (1986)). Though Plaintiff was clearly injured by I/I Collins's assault, he suffered only a temporary and <u>de minimis</u> injury as a result of the use of force by Defendants. As a result, Plaintiff cannot meet the objective harm element of an excessive force claim.

For the reasons stated above, Plaintiff fails to demonstrate either the objective or the subjective components of an Eight Amendment excessive force claim. Accordingly, this claim should be dismissed against Defendants.

## POINT II
## PLAINTIFF WAS NOT DEPRIVED OF EXERCISE IN VIOLATION OF HIS EIGHTH AMENDMENT RIGHTS

Plaintiff's second cause of action claims that Defendant Urbanski, as Deputy Superintendent of Security ("DSS") of Fishkill, violated his Eighth Amendment rights by signing the restraint order which denied him the right to exercise. The restraint order to which Plaintiff was subject, however, did not unconstitutionally deprive him of a right to exercise.

Exercise in a correctional facility is "one of the basic human needs protected by the Eighth Amendment." <u>Williams v. Goord</u>, 111 F. Supp. 2d 280, 292 (S.D.N.Y. 2000) (citing <u>Williams v. Greifinger</u>, 97 F.3d 699, 704 (2d Cir. 1996)). However, a deprivation of exercise amounts to a constitutional violation only where an incarcerated individual is denied "all meaningful exercise" for a substantial period of time. <u>See</u> <u>Davidson v. Coughlin</u>, 968 F. Supp. 121, 129 (S.D.N.Y. 1997). In determining whether an exercise deprivation rises to this level, a court may consider:

(1) the duration of the deprivation; (2) the extent of the deprivation; (3) the availability of other out of cell activities; (4) the opportunity for in-cell exercise; and (5) the justification for the deprivation. See Williams, 111 F. Supp. 2d at 291; Amaker v. Goord, No. 98 Civ. 3634, 1999 WL 511990, at *6 (S.D.N.Y. 1999) (citing Davidson, 968 F. Supp. at 130).

Upon balancing these factors in the instant case, Plaintiff cannot be found to have been denied all meaningful exercise. First, the length of Plaintiff's deprivation is uncontested: Plaintiff was the subject of a restraint order from May 7, 2020 to the time of his incident, or for 37 to 38 days. The extent of his deprivation—as seen by the video footage which captured the subject incident—included handcuffs and a waist chain during recreation. See **Ex. E.** His legs and feet were free and unencumbered, as indicated by the strides in the first fourteen minutes of the surveillance footage. See **Ex. E.** Moreover, Plaintiff admits that he was given two-and-a-half hours of recreation each day. 56.1 ¶ 10. With regard to the availability of other out of cell activities–DOCCS Directive 49333, which governed Special Housing Unit provisions at the relevant time–indicates that SHU inmates were permitted playing cards, books, magazines, or newspapers, photos, and stamps. See **Ex. B**, Directive 4933, § 303.2. I/Is serving SHU sanctions were also permitted law library access, counseling services (including religious counseling), and telephone calls. See Id., pp. 7–11. The fourth element the Court may consider—the opportunity for in cell exercise—also weighs in Defendant's favor, because Plaintiff was unrestrained within his cell. 56.1 ¶ 11.

Lastly, the reason for Plaintiff's deprivation in this case was based on a prior incident of violent conduct that occurred on April 23, 2020, a history of violent conduct, and a chronic disciplinary history, as indicated by the original restraint orders and all renewals. The restraint

order was, thus, based on a legitimate concern for security.  See **Ex. B**; see also, Pl. Dep. Tr., pp. 26: 25–27:16; 35:18–36:8.

Defendants do not suggest that the conditions imposed pursuant to Plaintiff's restraint order were insignificant; Plaintiff's restraints surely restricted his normal routine.  However, the limitations on Plaintiff's exercise did not amount to a denial of all meaningful exercise and Plaintiff was less restrained than the plaintiffs in those cases cited by your Honor in her Motion to Dismiss Opinion.  For example, in Williams v. Goord, the incarcerated plaintiff had been subject to 28 days of mechanical restraints, but he was only provided one hour of daily recreation instead of 2.5, and this daily exercise took place in a "one man cage" surrounded by four brick walls, rather than a recreation yard.  Williams, 111 F. Supp. 2d at 292.  Plaintiff in both Edwards v. Arnone and Edwards v. Quiros were only permitted into the recreation yard with full restraints, which included handcuffs, waist chain, and foot shackles or irons.  Edwards v. Arnone, 613 Fed. Appx. 44, 45 (2d Cir. 2015); Edwards v. Quiros, 986 F.3d 187 (2d Cir. 2021).  As seen by the video evidence, and as told by Plaintiff himself during his deposition, he did not endure this level of restraint.

In sum, Plaintiff's restraints, although undoubtedly restrictive and frustrating, do not rise to the level of having deprived Plaintiff of all meaningful exercise.

**POINT III**

**DEFENDANTS ARE ENTITLED TO QUALIFIED IMMUNITY**

Qualified immunity is "an immunity from suit rather than a mere defense to liability," the "driving force" for which is a "desire to ensure that insubstantial claims against government officials [will] be resolved prior to discovery." Pearson v. Callahan, 555 U.S. 223, 231 (2009) (quotations omitted).  Qualified immunity "attaches when an official's conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." White v. Pauly, 580 U.S. 73, 78 (2017) (internal citations omitted).  The Second Circuit

has instructed that "[t]he issues on qualified immunity are: (1) whether plaintiff has shown facts making out [a] violation of a constitutional right; (2) if so, whether that right was 'clearly established'; and (3) even if the right was 'clearly established,' whether it was 'objectively reasonable' for the officer to believe the conduct at issue was lawful." <u>Gonzalez v. City of Schenectady</u>, 728 F.3d 149, 154 (2d Cir. 2013) (citation omitted).   Even if the circumstances present a violation of a federal right, the defendant is still entitled to qualified immunity if it would not have been clear to a reasonable official that the actions taken violated the plaintiff's clearly established federal rights. <u>See</u> <u>Pearson</u>, 555 U.S. at 231–32.   So long as a defendant "has an objectively reasonable belief that his actions are lawful," he "is entitled to qualified immunity." <u>Spavone v. New York State Dep't of Corr. Servs.</u>, 719 F.3d 127, 138 (2d Cir. 2013) (internal quotations omitted).   Defendants are entitled to qualified immunity, as their actions have not violated any clearly established right.

Qualified Immunity for Defendants Deacon and DelBianco

In this matter, Defendants Deacon and DelBianco are entitled to qualified immunity because their actions did not violate any clearly established rights.   Plaintiff complains of highly discretionary decisions (to wit: when and how to intervene in the physical altercation of I/Is) that occurred without warning wherein one individual was striking the other with a chain in the keeplock yard of a prison.   Plaintiff argues that Sergeant Deacon is liable because he failed to immediately intervene aggressively enough to stop the assault and also that Sergeant Deacon and CO DelBianco are liable because they intervened too aggressively to stop the assault. But, just as Plaintiff is of two minds on the appropriate course of action here, reasonable government officials with similar experience as the Defendants could disagree as to the specific course of action called for in the difficult and developing situation that confronted them.   Qualified immunity allows

government officials the leeway to make reasonable but arguable decisions in situations where the precise application of a general legal concept may be difficult to determine. Qualified immunity is thus precisely suited for the officers who responded to Plaintiff's altercation in the instant case.

<u>Qualified Immunity for Defendant Urbanski</u>

Qualified Immunity should also attach for Defendant Urbanski. Defendants acknowledge the absence of precedent clearly holding that restraints of the sort imposed in this case were constitutional. As your Honor wrote in her motion to dismiss opinion in this matter, the Second Circuit has "declined to determine as a matter of law that and inmate's 'ability to shuffle around in full restraints while breathing fresh air constitutes meaningful exercise.'" <u>Brown v. Urbanski</u>, 21 CV 214 (CS), (S.D.N.Y April 14, 2022) (quoting <u>Quiros</u>, 986 F. 3d at 194–95).

But Defendants also cannot be found to have violated a clearly established rule–set by the Second Circuit or elsewhere–forbidding the restraints imposed in Plaintiff's case. The absence of a bright-line test regarding an I/I's right to exercise may generally obscure a defendant's entitlement to judgment, but for the same reason it should entitle Defendant Urbanski to qualified immunity. A defendant is entitled to qualified immunity if it would not have been clear to a reasonable official that the actions taken violated the plaintiff's clearly established federal rights. <u>See</u> <u>Pearson v. Callahan</u>, 555 U.S. 223, 231–32 (2009). It would not have been clear to someone in Defendant Urbanski's position. At the time of Plaintiff's altercation, Defendant Urbanski was DSS of Fishkill. He personally signed off on Plaintiff's restraint orders, and indicated in his response to the written interrogatory posed to him that Plaintiff's restraint order was based on "violent tendencies or a history of violence." <u>See</u> **Ex. D**, p. 5.

Moreover, a review of Directive 4933 suggests Plaintiff's restraint order followed DOCCS guidelines, which in turn balanced security concerns with the Constitutional rights of its

I/Is.  Pursuant to § 305.4(a), "any inmate assigned to an SHU who has a history of assaultive behavior and/or who presents himself, other persons, or State property may be placed under a restraint order by the Deputy Superintendent for Security or, in his or her absence, the OD or higher ranking authority."   See **Ex. B.**  The Directive goes on to provide that "a restraint order will be valid for no more than seven days and will be reviewed and may be renewed by the Superintendent or, in his absence, the OD."  Id., §305.4(b) The evidence in this matter demonstrates that DOCCS considered the delicate relationship a restraint order would have with an individual's constitutional rights when it required supervisory review of such orders after seven days.  Id.  DSS Urbanksi complied with this policy as demonstrated by his signature on each of the restraint order renewals served on him while present.[3] These facts, taken together, suggest DSS Urbanski was an official who took measures to comply with a constitutional policy, and as a result, is due the protections of qualified immunity.

Accordingly, because none of the Defendants' alleged acts or omissions violated any clearly established rights, they are entitled to qualified immunity, and Plaintiff's claims against them for money damages must be dismissed.

---

[3] Those restraint orders dated May 26 and May 28 were signed by acting DSS's or Superintendents, as permitted pursuant to §305.4(a), during Memorial Day weekend 2020.

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that this Court grant their motion for summary judgment and dismiss the Amended Complaint in its entirety.

Dated: New York, New York
December 30, 2022

Respectfully submitted,
LETITIA JAMES
Attorney General
State of New York
Attorney for Defendants
By:

*S/ Andrew Blancato*
Andrew Blancato
Assistant Attorney General
28 Liberty Street, 18th Floor
New York, New York 10005
212-416-6359
Andrew.Blancato@ag.ny.gov